UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHARLES LAYMAN,

        Plaintiff,                           Case No.: 3:14-cv-390

vs.

COMMISSIONER OF SOCAL SECURITY,      District Judge Thomas M. Rose
                                                        Magistrate Judge Michael J. Newman

        Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 8), the Commissioner's memorandum in opposition (doc. 10), Plaintiff's reply (doc. 12), the administrative record (doc. 7),[2] and the record as a whole.

I.

A. Procedural History

Plaintiff previously applied for Supplemental Security Income ("SSI") and DIB alleging a disability onset date of July 15, 2005. PageID 122. After initial denial of his claims, Plaintiff received a hearing before ALJ Thomas R. McNichols, II on September 25, 2008. *See id.* On

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

December 4, 2008, ALJ McNichols -- despite finding Plaintiff suffered from the severe impairments of intermittent neck and back pain, mild chronic obstructive pulmonary disease, a mood disorder characterized by anxiety and depression, and borderline intellectual functioning ("BIF") -- issued a written decision finding Plaintiff not disabled as of that date, thus denying Plaintiff benefits. PageID 122-35. The Appeals Council denied review, and Plaintiff did not challenge that finding on appeal. PageID 137; *see* PageID 116. Accordingly, as a matter of law, Plaintiff is not disabled through December 4, 2008, the date of ALJ McNichols's decision. *See Way v. Comm'r of Soc. Sec.*, No. 1:10-cv-535, 2011 WL 3737711, at *5 (S.D. Ohio June 23, 2011) (holding that the ALJ's decision was binding when Plaintiff failed to institute a civil action seeking judicial review within 60 days of receipt of the Appeals Council's notice of its decision to deny review) (citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)); *see also* 20 C.F.R. § 416.1481.

Plaintiff thereafter filled his second application -- for DIB only -- which is the subject of this appeal, seeking a disability award commencing July 15, 2005. PageID 225-31. For the reasons discussed in *Way*, Plaintiff can now only be found disabled from December 5, 2008 onward, *i.e.,* the unadjudicated period following ALJ McNichols's decision. In that second application, Plaintiff claimed to suffer from the following physical and mental conditions: polycystic kidney disease; bipolar disorder; depression; illiteracy; anxiety; a back injury; and a leg injury. PageID 259.

After initial denials of his application, Plaintiff received a hearing before ALJ Amelia G. Lombardo. PageID 94-117. ALJ Lombardo issued a written decision on April 18, 2013 finding Plaintiff not disabled. PageID 72-88. Specifically, her findings were as follows:

    1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from December 5, 2008, the earliest possible date for a possible finding of disability, through the date last insured of December 31, 2009 (20 C.F.R. 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: lumbar spine degenerative disc disease, mild chronic obstructive pulmonary disease, [BIF], [and a] mood disorder (20 C.F.R. 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).

5. Through the date last insured, the claimant had the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b)[3] subject to the following limitations: the opportunity to alternate between sitting and standing as necessary (i.e., standing and walking no more than four hours in an eight hour workday); no climbing ladders, ropes or scaffolding; no operation of foot controls; no work at unprotected heights or around moving or hazardous machinery; no more than occasional stooping or crouching; essentially unskilled low-stress duties (i.e., no fast-paced tasks or assembly-line production quotas; no more than occasional contact with the general public, co-workers, or supervisors.

6. Through the date last insured, the claimant was unable to perform [his] past relevant work (20 CFR 404.1565).

7. The claimant was born [in] 1977. As of the date last insured[,] the claimant was 32 years old and he was classified as a "younger individual" for Social Security purposes (20 CFR 404.1563).

8. The claimant has a[n] 11th-grade or "limited" education as defined for Social Security purposes (20 CFR 404.1564).

---

[3] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

> 9. The claimant does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 404.1568).
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant was not disabled, as defined in the Social Security Act, at any time from December 5, 2008, the earliest potential date for a finding of possible disability, through December 31, 2009, the date last insured (20 C.F.R. 404.1520(g)).

PageID 76-88.

Thereafter, the Appeals Council denied Plaintiff's request for review, making ALJ Lombardo's non-disability finding the final administrative decision of the Commissioner. PageID 50-52. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

### B. Evidence of Record

In her decision, ALJ Lombardo set forth a detailed recitation of the underlying medical evidence in this case. PageID 76-84. Plaintiff, in his Statement of Errors, also summarizes the evidence of record. Doc. 8 at PageID 1378-85. The Commissioner's response to Plaintiff's Statement of Errors refers the Court to the ALJ's recitation of evidence and offers no objections to Plaintiff's summary of relevant facts. Doc. 10 at PageID 1401. Accordingly, except as otherwise noted in this Report and Recommendation, the undersigned incorporates ALJ Lombardo's recitation of the evidence as well as Plaintiff's undisputed summary of the evidentiary record. Where applicable, the Court will identify the medical evidence relevant to this decision.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe

enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

**III.**

In his Statement of Errors, Plaintiff argues that ALJ Lombardo erred by: (1) failing to find that his condition has worsened since ALJ McNichols's December 4, 2008 decision; and (2) improperly evaluating his credibility. Doc. 8 at PageID 1376. These arguments are addressed in turn.

### A. Worsening of Plaintiff's Condition

Pursuant to the doctrine of administrative *res judicata* as set forth in *Drummond*, where, as here, two ALJs have reviewed Plaintiff's disability applications, the Commissioner is bound by the first ALJ's RFC finding unless new evidence or changed circumstances require a different finding. *Drummond,* 126 F.3d at 842; s*ee also* Acquiescence Ruling ("AR") 98-4(6), 63 Fed. Reg. 29771 (June 1, 1998) (acknowledging acquiescence with *Drummond*). Accordingly, to avoid application of a prior ALJ's findings, a plaintiff must produce evidence demonstrating that his or her condition has worsened since the time of the prior determination.[4] *See, e.g., Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 515 (6th Cir. 2011).

In ALJ Lombardo's 2013 decision, she found that Plaintiff's "condition has not changed appreciably since the issuance of the prior decision on December 4, 2008" and, accordingly, pursuant to AR 98-4(6), "generally adopted [the prior ALJ's findings] with slight modifications" and found Plaintiff not disabled. PageID 73, 88. Plaintiff contends that ALJ Lombardo erred in this regard by not finding a worsening of his condition since the 2008 decision that results in a finding of disability prior to his date last insured ("DLI") of December 31, 2009.[5] Doc. 8 at PageID 1386-92. In so arguing, Plaintiff presents two separate arguments: (1) ALJ Lombardo erred in rejecting the opinion of his treating physician, Jason Faber, M.D.; and (2) ALJ Lombardo erred in not finding his kidney disease "severe" at Step Two of the sequential benefits evaluation. *Id.*

---

[4] Some courts in this circuit refer to this standard as the "presumption of continuing non-disability." *See, e.g.*, *Bender v. Comm'r of Soc. Sec.*, No. 11-cv-1546, 2012 WL 3913094, at *5 (N.D. Ohio Aug. 17, 2012); *but see Hogancamp v. Colvin*, No. 5:13-cv-97-LLK, 2014 WL 1681121, at *3 (W.D. Ky. April 28, 2014).

[5] In order to qualify for DIB, a claimant must "establish the onset of disability *prior* to the expiration or his [or her] insured status." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984) (citation omitted) (emphasis in original).

### 1. Treating Physician Opinion

The undersigned initially addresses Plaintiff's argument that ALJ Lombardo erred in rejecting Dr. Faber's opinion. Doc. 8 at PageID 1389-92. To that end, Plaintiff notes that ALJ Lombardo's adoption of Dr. Faber's analysis would have resulted in a disability finding. *Id.* at PageID 1390; PageID 115. "[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id.* "An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original). This requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted). Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406.

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*. Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406.

On February 4, 2013, Dr. Faber opined that Plaintiff would miss work three times per month or more due to his impairments. PageID 1289. ALJ Lombardo gave "no weight" to Dr. Faber's opinion because, *inter alia*, it was given over three years after Plaintiff's DLI and Dr. Faber provided "no reasonable medical basis" for his opinion. PageID 82.

Substantial evidence supports ALJ Lombardo's conclusion in this regard. First, the lack of a reasonable medical basis is a good reason to reject Dr. Faber's opinion. *Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 176 (6th Cir. 2009) (affirming an ALJ's rejection of a treating physician's opinion when he "failed to provide any explanation for his responses" or "identify objective medical findings to support his opinion"). Dr. Faber's opinion contains no information other than expected monthly absences.[6] PageID 1289. As reasonably found by ALJ Lombardo, there is no indication as to what conditions or treatments would cause such absences, or what objective medical findings support his opinion. PageID 82.

Second, "evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin*., 88 F. App'x 841, 845 (6th Cir. 2004) (citation omitted). Post-DLI evidence must be considered only "to the extent it illuminates [a]

---

[6] In response to a single interrogatory -- "[o]n the average, how often do you anticipate that your patient's impairments or treatment would cause your patient to be absent from work?" -- Dr. Faber circled the response "[m]ore than three times a month" and provided no other information. PageID 1289.

claimant's health before that date." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citation omitted). It is unclear to the undersigned how such a conclusory opinion relates back to Plaintiff's health prior to his DLI, *i.e.,* over three years before Dr. Faber gave his opinion.

Based on the foregoing, the undersigned finds no error in regard to ALJ Lombardo's review of Dr. Faber's opinion.

### 2. Severe Kidney Impairment

Plaintiff next argues that ALJ Lombardo erred by failing to find he has severe kidney disease that developed after the prior ALJ decision. Doc. 8 at PageID 1387-89. To determine whether Plaintiff's condition worsened with respect to his kidney disease during the relevant time period -- *i.e.*, from the day after ALJ McNichols's decision, December 5, 2008, to his DLI, December 31, 2009 -- a "comparison between circumstances existing at the time of the prior decision and circumstances existing at the time of review is necessary." *Blankenship v. Comm'r of Soc. Sec.*, No. 14-2464, 2015 WL 5040223, at *6 (6th Cir. Aug. 26, 2015) (citation omitted).

Viewing the medical records as a whole -- and comparing this evidence to the 2008 decision -- substantial evidence does not support ALJ Lombardo's conclusion that Plaintiff's condition did not worsen during the relevant time period. ALJ McNichols's 2008 decision made no mention, and considered no evidence, of a kidney impairment. *See* PageID 122-35. In contrast, the record before ALJ Lombardo contains significant, objective evidence of Plaintiff's kidney disease from after the 2008 decision and before Plaintiff's DLI; namely, CT scans conducted in January, June, and December 2009 demonstrating, *inter alia,* "multiple low-density lesions within the kidneys bilaterally [which] likely represent cysts"; a "complex and likely hemorrhagic left renal cyst"; multiple intrarenal stones; and an exophytic mass from the left kidney containing calcification. PageID 506, 541-42, 556-57. There is additional, relevant

evidence of kidney disease from after Plaintiff's DLI including: a January 2010 CT scan revealing bilateral nephrolithiasis (kidney stones); an August 2010 CT scan demonstrating polycystic kidney disease; and over two years of treatment records from Kidney Care Specialists, LLC, where Plaintiff was seen for, *inter alia*, polycystic kidney disease and pain. PageID 462, 496, 1053-83; *Higgs*, 880 F.2d at 863 (post-DLI evidence "must be considered to the extent it illuminates [a] claimant's health before that date").

Accordingly, and in light of significant evidence of kidney disease developed after the prior disability decision, ALJ Lombardo erred in applying *Drummond* and concluding that Plaintiff's condition had not significantly changed. *See Goddard v. Comm'r of Soc. Sec.*, 2:11-cv-809, 2012 WL 3269337, at *8 (S.D. Ohio Aug. 10, 2012) *Report and Recommendation adopted,* 2012 WL 4180703 (S.D. Ohio Sept. 18, 2012) (holding that the second ALJ erred in applying *Drummond*, in part, when there was evidence of new impairments that the previous ALJ did not consider); *see also Ray v. Astrue,* No. 1:11–cv–194, 2012 WL 2160826, at *3–5 (S.D. Ohio June 13, 2012) *Report and Recommendation adopted*, 2012 WL 2601386 (S. D. Ohio July 5, 2012).

As to the severity of Plaintiff's kidney disease, ALJ Lombardo briefly considered this issue but concluded -- at Step Two of the sequential benefits analysis -- that Plaintiff's kidney disease does not constitute a "severe" impairment. PageID 79. Whether or not ALJ Lombardo correctly analyzed Plaintiff's kidney disease at Step Two,[7] once she found that Plaintiff suffered from at least one severe impairment, as occurred here, she was required to consider limitations and restrictions imposed by all of Plaintiff's impairments -- severe and non-severe -- at Step

---

[7] Establishing a severe impairment at Step Two is considered a "*de minimis* hurdle[,]" *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.,* 773 F.2d 85, 89 (6th Cir. 1985).

Four. *Fisk v. Astrue,* 253 F. App'x 580, 583 (6th Cir. 2007) (citing Social Security Rule ("SSR") 96–8p, 1996 WL 374184, at *5 (July 2, 1996)).

Here, ALJ Lombardo failed to even mention Plaintiff's kidney disease in constructing his RFC and determining, at Step Four, whether or not he can perform his past relevant work. *See* PageID 81-86. Even if ALJ Lombardo determined that Plaintiff's kidney disease did not result in any limitations, she was "required to state the basis for such conclusion." *Singleton v. Comm'r of Soc. Sec.*, No. 3:14-cv-140, 2015 WL 3606855, at *3-4 (S.D. Ohio June 8, 2015). This did not occur here. ALJ Lombardo's failure to consider what work-related limitations, if any, arose from Plaintiff's kidney disease during the relevant time period thus merits reversal. *Johnson v. Colvin*, No. 3:13–cv–301, 2014 WL 6603376, at *8 (S.D. Ohio Nov. 19, 2014) (citations omitted) *Report and Recommendation adopted*, 2014 WL 7015188 (S.D. Ohio Dec. 10, 2014); *Singleton*, 2015 WL 3606855, at *3-4.

### B. Credibility Assessment

Plaintiff last contends that the ALJ improperly found him less than fully credible. Doc. 8 at PageID 1392-94. Finding remand warranted on other grounds, *see supra*, the undersigned makes no finding with regard to this alleged error. Instead, Plaintiff's credibility should be assessed anew on remand.

### IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*,

905 F.2d 918, 927 (6th Cir. 1990).  The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming.  *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Here, remand for further proceedings is necessary so that the ALJ may reassess the severity of Plaintiff's kidney disease, properly evaluate the impact such a condition has on his RFC, reassess Plaintiff's credibility, and determine his disability status anew.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date:   February 8, 2016                             *s/ Michael J. Newman*
                                                    Michael J. Newman
                                                    United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).